UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SOUTHRIDGE PARTNERSHIP, a Washington
general partnership,

               Plaintiff,

     v.

ASPEN SPECIALTY INSURANCE
COMPANY,

               Defendant.

CASE NO. C08-0931-JCC

ORDER

     This matter comes before the Court on Plaintiff's Motions for Partial Summary Judgment (Dkt. Nos. 22, 23), Defendant's Responses in opposition and Requests for Sanctions (Dkt. Nos. 25, 27), and Plaintiff's Replies (Dkt. Nos. 29, 30). The Court has carefully considered these papers and their supporting declarations and exhibits and has determined that oral argument is not necessary. The Court hereby DENIES Plaintiff's motions and finds and rules as follows.

## I.    BACKGROUND

     Plaintiff, the owner of numerous apartment buildings in the State of Washington, purchased a business insurance policy from Defendant Aspen Specialty Insurance Company,[1] which was in effect on

---

[1]Defendant states that Plaintiff erroneously named Aspen Specialty Insurance Company in the Complaint, rather than Aspen Insurance UK Limited. (Resp. 1 (Dkt. No. 25).) Plaintiff disputes that it has misnamed Defendant. (Reply 3 (Dkt. No. 29).) Defendant appears to have admitted in discovery that

ORDER – 1

December 14, 2006. (Compl. ¶ 3.1 (Dkt. No. 1 at 13).) The policy included property coverage for damage to Plaintiff's apartment buildings caused by wind. (*Id*.) On December 14, 2006, Plaintiff suffered damage to the roofs of some of its apartment buildings and garages in Puyallup, Washington, from a windstorm. (*Id*. ¶ 3.2; Dyer Decl. ¶ 4 (Dkt. No. 22 at 29).) Thereafter, Plaintiff submitted a claim to Defendant to repair and/or rebuild the apartment buildings and garages to their pre-loss condition. (Compl. ¶ 3.3 (Dkt. No. 1 at 13).)

Defendant's roofing consultant conducted an investigation and found that the wind damage attributable to the storm of December 14, 2006, was minor and that all claimed damage was repairable and did not require full roof replacement. (Resp. 2 (Dkt. No. 25).) On October 9, 2007, Defendant provided its findings in writing to Plaintiff's public insurance adjuster, Bud Dyer. (Dkt. No. 26-2 at 2.) On November 1, 2007, Defendant again sent a letter to Dyer, in response to a letter from him, reiterating that the investigation confirmed that the wind damage was repairable and did not support a full roof replacement. (Dkt. No. 26-3 at 2.) On November 9, 2007, Defendant sent Plaintiff a letter and a check for $22,416.04 for the loss. (Dkt. No. 26-4.) In the letter, Defendant again repeated that the loss was determined to be minor and repairable and did not require full roof replacement. (*Id*. at 3.)

Plaintiff, however, continued to pursue coverage for full replacement from Defendant. (Resp. 3 (Dkt. No. 25 at 9).) On April 24, 2008, Defendant sent Dyer a letter reminding Plaintiff that "[a] coverage determination was issued to you on October 9, 2007." (Dkt. No. 26-5 at 2.) The letter again summarized the findings of the investigation and the communications between the parties. (*Id*.)

Plaintiff filed a lawsuit in the King County Superior Court on May 13, 2008, claiming that Defendant breached its insurance contract in bad faith and violated the Washington Consumer Protection Act, Washington Revised Code Chapter 19.86, in handling Plaintiff's insurance claim.

---

Aspen Specialty Insurance Company was correctly named in the Complaint. (Response to Request for Admission No. 1 (Dkt. No. 29 at 32).) Accordingly, the Court will assume at present that Defendant has been properly named.

(Compl. ¶ 3.4, 5.2 (Dkt. No. 1 at 13).) Plaintiff also alleged that Defendant violated the Washington Administrative Code ("WAC") in handling its claim. (*Id.* ¶ 6.2.) Defendant thereafter removed the case to this Court.

On July 29, 2008, Dyer sent a letter directly to Defendant, rather than to Defendant's attorneys, stating that "[t]he best interests of the insured's [sic] cannot be achieved by having this claim drag on any longer while failing to reach agreement with Aspen Specialty Insurance Company" and that "the insured's [sic] are left with no alternative but to demand that their loss be settled by way of appraisal[.]" (Dkt. No. 26-7 at 2.) Counsel for Defendant wrote back to Dyer on July 31, 2008, informing him that Plaintiff had filed suit and directing that all future communications be directed through counsel. (Dkt. No. 26-8 at 2.) In addition, the letter made clear that Defendant believed that appraisal was inappropriate because Plaintiff chose to litigate the claim. (*Id.*)

On August 5, 2008, counsel for Defendant wrote to Plaintiff's counsel, Michael Watkins and Timothy Bearb, directing them to send communications with respect to the litigated roof damage insurance claim to Defendant's attorneys since both Plaintiff and Defendant were represented by counsel. (Dkt. No. 26-9 at 2.)

On August 7, 2008, Defendant's counsel wrote to Plaintiff's counsel regarding Dyer's letter of July 29, 2008, which had demanded appraisal. (Dkt. No. 26-10.) Having learned that Dyer's letter had been sent with the approval of Plaintiff's counsel, Defendant now rescinded its prior decision not to participate in appraisal. (*Id.*) Defendant instead agreed to participate in a "two-track process, wherein the parties submit the amount of loss to appraisal during the pendency of the litigation" if Plaintiff would stipulate that the appraisal process would determine the amount of loss both in terms of the value of the damaged property and the cost to repair and replace the damaged property. (*Id.*) Defendant proposed that by having the appraisal process determine these amounts, the parties could then "submit the award to the court for a determination of Aspen's liability" under the policy. (*Id.*)

Plaintiff's counsel responded by letter on August 19, 2008, stating that "we are unable to

ORDER – 3

determine Aspen's position regarding the status of its investigation and whether it will comply with its obligations under the appraisal clause of the insurance policy." (Dkt. No. 26-11.) In that letter, Plaintiff's counsel "request[ed] clarification of Aspen's position with respect to its investigation of Southridge's wind damage claim" as to these two questions:

1.    Have you completed your investigation of Southridge's above-referenced claims? If not, what additional information do you need to complete your investigation?

2.    If you have completed your investigation of Southridge's above-referenced claims, what amount do you contend it is owed pursuant to the subject insurance policy?

(*Id.*) In addition, the letter requested clarification as to Defendant's position on appraisal with the following questions:

1.    Has Aspen previously rejected Southridge's request for appraisal of the above-referenced claims? If so, on what contractual basis did Aspen reject Southridge's request for appraisal?

2.    Will Aspen submit to appraisal pursuant to the subject insurance policy?

(*Id.*) The letter closed with "[w]e respectfully request that you respond to these questions pursuant to WAC 284.30.360(3)." (*Id.*)

    On October 20, 2008, Plaintiff's counsel sent another letter to Defendant's counsel, stating that:

On August 7, 2008, your firm directed a letter to the Law Offices of Michael T. Watkins in which you rescinded Aspen's earlier declination of appraisal, however, Aspen attempted to impose two pre-conditions to the appraisal process. We are unaware of any authority that permits an insurer to unilaterally add conditions to the appraisal clause of an existing insurance policy. . . . At this time, on behalf of Southridge, we resubmit our client's demand for appraisal as outlined in Mr. Dyer's July 29, 2008 correspondence[.]

(Dkt. No. 26-12.) Again, the letter closed with "[w]e respectfully request that you respond to this demand pursuant to Washington Administrative Code § 284.30.360(3)." (*Id.*)

    On November 18, 2008, Defendant's counsel responded to the October 20 letter stating, *inter alia*, that:

As we have explained on multiple occasions to Mr. Bearb and in previous correspondence, Aspen has agreed to participate in the appraisal. By requesting certain conditions for the appraisal, Aspen seeks only to ensure that the appraisers do not exceed

ORDER – 4

the authority granted them under the appraisal clause.

(Dkt. No. 26-13.) The letter outlined once again its proposal for a stipulation determining the role of the appraisal process during litigation.

Plaintiff's counsel did not respond to the letter of November 18, 2008. (Resp. 7 (Dkt. No. 25 at 13).) Instead, Plaintiff filed the instant motions seeking partial summary judgment based on the alleged failure of Defendant's counsel to respond within ten days to Plaintiff's counsel's letters of August 19, 2008, (Dkt. No. 22) and October 20, 2008 (Dkt. No. 23). Plaintiff's motions ask the Court to find that (1) Defendant failed to timely reply to Plaintiff's August 19 and October 20 letters in violation of the WAC; (2) Defendant committed *per se* violations of the Washington Consumer Protection Act by violating the WAC; and (3) Defendant breached its duty of good faith to Plaintiff by violating the WAC. (Mot. 4 (Dkt. No. 22, 23).)

Defendant opposes the motions on numerous grounds, including the argument that Defendant fully and expeditiously responded to the issues raised in the August 19 and October 20 letters both before and after receiving those letters. (Resp. 1 (Dkt. Nos. 25 at 7; 27 at 7).) In addition, Defendant asserts that because the letters were between counsel during the pendency of litigation in this case, the Federal Rules of Civil Procedure applied to those communications rather than the provisions of Washington's fair claims handling procedures. (*Id*.) Further, Defendant highlights the fact that Plaintiff's attorneys filed a nearly identical motion in a case pending before the Honorable Marsha J. Pechman, which was denied a month before they filed the instant motion. (*Id*.) Defendant argues that the same reasoning in Judge Pechman's order should apply here. Defendant seeks sanctions against Plaintiff for vexatiously multiplying the proceedings in this case, pursuant to 28 U.S.C. § 1927. (*Id*.)

## II.    APPLICABLE LAW

### A.    Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is

ORDER – 5

entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The moving party bears the initial burden of showing that no genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the moving party meets this initial burden, then the party opposing the motion must set forth facts showing that there is a genuine issue for trial. *See T.W. Elec. Serv.*, 809 F.2d at 630. The party opposing the motion must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "In response to a summary judgment motion, . . . the [non-moving party] can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts, . . . which for the purposes of the summary judgment motion will be taken to be true." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); FED. R. CIV. P. 56(e). If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

### B.   Washington Law Regarding Unfair and Deceptive Practices

Washington law prohibits insurers from committing "unfair or deceptive acts or practices in the conduct of [their] business." WASH. REV. CODE § 48.30.010(1). The WAC defines certain unfair or deceptive acts or practices in the business of insurance, specifically applicable to the settlement of claims. WAC § 284-30-330. Among those outlawed practices is "[f]ailing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies." WAC § 284-30-330(2). In particular, an insurer must make an "appropriate reply" within ten working days with respect to "pertinent communications from a claimant which reasonably suggest that a response is expected." WAC § 284-30-360(3). Additionally, a "claimant" is defined as "a first party claimant, a third party claimant, or both and includes such claimant's designated legal representative." WAC § 284-30-320(2).

ORDER – 6

# III.  DISCUSSION

In *Stegall v. Hartford Underwriters Insurance Co.*, No. C08-0668-MJP, 2009 WL 54237, at *2–3 (W.D. Wash. Jan. 7, 2009), the plaintiffs, also represented by Plaintiff's counsel herein, sought summary judgment on nearly identical grounds based on a very similar letter sent to the defendant's counsel.[2] Judge Pechman ruled that WAC sections 284-30-330(2) and 284-30-360(3) did not apply to the letter at issue there because the letter was between counsel regarding a matter that was inextricably part of ongoing litigation involving a contested insurance claim and as such, the Federal Rules of Civil Procedure and not the WAC applied to the exchange of information. *Id*. at *2. The Court highlighted the fact that Washington courts have only applied WAC sections 284-30-330(2) and 284-30-360(3) "in circumstances where an insurer failed to respond to a claim-related inquiry made <u>before</u> litigation against the insurer was initiated." *Id*. at *3 (*citing Besel v. Viking Ins. Co.*, 21 P.3d 293, 299 (Wash. Ct. App. 2001); *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, No. 80359-5, 2008 Wash. LEXIS 1055 (Wash. Nov. 26, 2008); *Am. Best Food, Inc. v. Alea London, Ltd.*, 158 P.3d 119, 129 (Wash. Ct. App. 2007)).

The Court finds the reasoning in *Stegall* applicable and persuasive here. The letters of August 19, 2008, and October 20, 2008, were communications between counsel regarding matters that were

---

[2]Bearb's letter to the insurer's counsel on behalf of the *Stegall* plaintiffs read, in pertinent part:

At this time we respectfully request clarification of Hartford's position with respect to its investigation of the Stegall's claim:

1.    Have you completed your investigation of the Stegall's above-referenced claim? If not, what additional information do you need to complete your investigation?

2.    If you have completed your investigation of the Stegall's above-referenced claim, what amount do you contend they are owed pursuant to their insurance policy?

We respectfully request that you respond to these questions pursuant to WAC 284.30.360(1).

(C08-0668-MJP, Dkt. No. 13 at 18–19.)

ORDER – 7

inextricably part of the ongoing litigation concerning the contested insurance claim for roof damage from the windstorm of December 14, 2006. The Court is therefore not persuaded that the claims handling provisions of the WAC apply to these letters. Rather, like the plaintiffs in *Stegall*, "[w]hen Plaintiffs filed this action, they effectively halted any claims settlement process and subjected themselves to the rules governing litigation." *Stegall*, 2009 WL 54237, at *3.

The Court also notes that even if the WAC did apply to these communications, Plaintiff has not persuaded the Court that Defendant failed to make an appropriate reply to Plaintiff's queries in such a way as would violate the WAC. The record demonstrates that Defendant had responded numerous times to Plaintiff's requests for information about the issues raised in its August 19 and October 20 letters. Specifically, the August 19, 2008, letter asked whether the claims investigation was complete, and if so, what amount Defendant believed was owed to Plaintiff under the insurance policy. As outlined above, Defendant had already answered these questions numerous times in its letters to Dyer. (Oct. 9, 2007 letter (Dkt. No. 26-2); Nov. 1, 2007 letter (Dkt. No. 26-3 at 2); Nov. 9, 2007 letter (Dkt. No. 26-4); April 24, 2008 letter (Dkt. No. 26-5).) After May 13, 2008, these questions were also being actively litigated between the parties.

Plaintiff's letters of August 19, 2008 and October 20, 2008, also asked about Defendant's position on appraisal. Defendant notified Plaintiff of its position on appraisal in its letters first to Dyer and then to Plaintiff's counsel. (July 31, 2008 letter (Dkt. No. 26-8); August 7, 2008 letter (Dkt. No. 26-10); November 18, 2008 letter (Dkt. No. 26-13).) It also appears that in addition to corresponding about this issue, Defendant's counsel "explained on multiple occasions to Mr. Bearb" that Defendant would agree to participate in appraisal if Plaintiff would agree to a stipulation clarifying the role of the appraisal panel, given the ongoing litigation. (Nov. 18, 2008 letter (Dkt. No. 26-13).) Under these circumstances, the Court is not persuaded that the letters at issue "reasonably suggest[ed]" that additional responses were expected of Defendant. *See* WAC § 284-30-360(3).

Because the Court declines to find that Defendant violated the WAC, the Court must also DENY

ORDER – 8

Plaintiff's motions with respect to its arguments that Defendant committed *per se* violations of the Washington Consumer Protection Act and that Defendant breached its duty of good faith to Plaintiff by violating the WAC.

**IV.  CONCLUSION**

For the foregoing reasons, the Court hereby DENIES Plaintiff's Motions for Partial Summary Judgment (Dkt. Nos. 22, 23). Additionally, the Court declines to impose sanctions on Plaintiff for filing the instant motions pursuant to 28 U.S.C. § 1927.

SO ORDERED this 1st day of May, 2009.


John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER – 9